VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 15-2-20 Vtec



---

Burton Corp. Site Work Approval

---

## DECISION ON MOTIONS

A group of 13 individuals, collectively the "CRZ Group" ("CRZ"), appeals a January 27, 2020 decision of the City of Burlington ("City") Development Review Board ("DRB") upholding two zoning permits issued by the City Zoning Administrator to the Burton Corporation ("Burton") for various site improvements and stormwater infrastructure enhancements at its corporate headquarters located at 180 and 266 Queen City Park Road.[1]  Presently before the Court are cross-motions for summary judgment filed by each of the parties in this case: CRZ, Burton, and the City.

Appellant Group CRZ is represented in this matter by Franklin L. Kochman, Esq., and Burton is represented by Jonathan T. Rose, Esq.  The City is represented by Kimberlee J. Sturtevant, Esq.

### Legal Standard

We will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable through V.R.E.C.P. 5(a)(2).  We accept as true all of the nonmovant's allegations of fact, as long as they are supported by affidavits or other evidence.  White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted).  In considering cross-motions

---

[1] For purposes of this appeal, CRZ's members are: Almy Landauer, Janice Ellis, Lawrence Smith, Barbara Pawluk, Susan Hurd, James Grossman, Lori Hayes, Sharon O'Neill, Elisa Nelson, Kyle Creason, Stephanie Herrick, Doug Goodman, and Michael Turner.

for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

## Factual Background

We recite the following facts, which we understand to be undisputed unless otherwise noted, based on the record now before us and for the sole purpose of deciding the pending motions. The following are not specific factual findings with relevance outside of this summary judgment decision. *See* Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1. Burton owns two adjacent lots located at 180 Queen City Park Road ("180 Property") and 266 Queen City Park Road ("266 Property"), which together serve as Burton's corporate campus ("the Site").

2. Burton wishes to make several changes to the existing development at the Site. These include the following: (1) construction of two stormwater treatment features, called gravel wetlands; (2) reconfiguration of the parking lots with relocated parking islands; (3) relocation and changes to the curb cut on the western boundary of the 266 Property and elimination of the southern-most curb cut on the western boundary of the 266 Property; (4) changes to an existing curb cut on the western boundary of the 180 Property, (5) a new curb cut on the eastern side of the southern boundary of the 266 Property; (6) the removal of an approximately 378 square-foot ("SF") storage shed from the southerly portion of the existing building on the 266 Property; and (7) the construction of a new front entrance (approximately 148 square feet) on the western façade of the building on the 266 Property (collectively, "the Project").

3. The Project is subject to the Burlington Comprehensive Development Ordinance ("CDO"), effective January 30, 2008.

4. The Site is in the Enterprise-Light Manufacturing ("E-LM") Zoning District, as well as the Design Review Overlay District.

5. Burton hired John Caulo, Owner of LandPlan Development Services, LLC, to manage the Project. Mr. Caulo consulted with the Zoning Administrator in August and September 2019, prior to any zoning permit application.

6. The Zoning Administrator advised Burton that the application could be processed administratively if the proposal did not result in more than 500 square feet of net new impervious lot coverage.

7. Though the proposed improvements represent thousands of square feet in paving, excavation, and other disturbance, they will not increase the total amount of impervious lot coverage at the Site. Overall, impervious surface lot coverage will decrease slightly under the proposal.

8. On November 7, 2019, Burton submitted a zoning application for the Project, including a set of site plans. After further consultation with the Zoning Administrator, Burton revised its site plans to remove ten parking spaces from the proposed parking lot design.

9. On November 18, 2019, at the Zoning Administrator's request, Burton submitted a second zoning application specific to the 266 Property, to reflect the fact that the Project encompassed two separate lots.

10. The Zoning Administrator approved both applications on November 19, 2019, and issued two zoning permits in the form of Level II Certificates of Appropriateness ("Certificates") for the Project: Permit #20-0493CA for the 180 Property and Permit #20-0514CA for the 266 Property.

11. The Certificates were subject to "Pre-Release Conditions" which required:

1. Prior to release of the zoning permit, a completed "standard erosion prevention and sediment control plan" shall be submitted, subject to review and approval by the city stormwater program staff.

2. The proposed curb cut work is subject to separate review and permitting by the Department of Public Works' Excavation Inspector.

3. The proposed stormwater improvements are subject to separate review and approval by the Department of Public Works' stormwater program staff. Caulo Ex. 2 (permits)

12. The Burlington Department of Public Works reviewed Burton's application materials, along with its Erosion Prevention and Sediment Control Plan and Stormwater Management

3

Plan. After review, the City Engineer approved the proposed curb cut work on January 16, 2020. The Stormwater Program Coordinator approved the Erosion Prevention and Sediment Control Plan and Stormwater Management Plan on January 17, 2020.

13. On December 3, 2019, CRZ appealed the approved Certificates to the DRB, asking the DRB to vacate the Zoning Administrator's decision and require a full DRB hearing and review in the first instance.

14. The City of South Burlington also appealed to the DRB the following day. The Site is quite close to the boundary line between Burlington and South Burlington, and South Burlington noted that one of the proposed curb cuts appeared to provide access to the street within its jurisdiction. South Burlington requested a traffic study along with permit conditions to mitigate impacts within its jurisdiction.

15. The DRB set both appeals for public hearing at its January 22, 2020, meeting.

16. Before the hearing, Burton and South Burlington reached a settlement agreement. South Burlington agreed to withdraw its appeal, and Burton committed to certain conditions. Most relevant here, Burton was to undertake a "good faith effort" to add a permit condition to its Certificate for the 266 Property, restricting the use of the southeasternmost driveway on the lot and requiring that the vehicle access point for the driveway be located outside the jurisdiction of South Burlington.

17. At the DRB hearing on January 22, 2020, the Zoning Administrator presented the basis for his approval of the Certificates for the Project. CRZ declined to weigh in on the merits of the applications, instead arguing that the Project should have been referred to the DRB in the first instance and not processed administratively.

18. Burton submitted revised site plans for consideration at the hearing which included a relocated curb cut to reflect South Burlington's concerns. Burton also proposed a condition regarding the southeasternmost driveway and curb cut on the 266 Property. Representatives from South Burlington did not attend the hearing.

19. The DRB entered deliberations at the close of the hearing. The Zoning Administrator was present, along with representatives from Burton and CRZ.

4

20.     The City asserts that zoning officers, including the Zoning Administrator, were present during the DRB deliberation to act as staff and assist with recording the proceedings. According to the City, this is consistent with typical practice. CRZ does not directly dispute the City's characterization.

21.     On January 27, 2020, the DRB issued its decision denying CRZ's appeal of the Certificates ("January 27 Decision"). The DRB concluded that administrative review and approval for the Project was proper and that the applications were reviewed under all applicable zoning regulations.

22.     On February 6, 2020, the DRB issued a decision regarding South Burlington's appeal of the Certificates ("February 6 Decision"), noting that South Burlington had conditionally withdrawn its appeal in light of Burton's revised site plans and the proposed condition regarding the southernmost driveway and curb cut on the 266 Property. The DRB's decision adopted Burton's proposed permit condition for the 266 Property.

23.     CRZ appealed the January 27 Decision to this Court on February 20, 2020. No party has appealed the February 6 Decision.

24.     To demonstrate standing for its members to pursue this appeal, CRZ directs the Court to its responses to Burton's interrogatories and to an affidavit of Lawrence Smith, CRZ's designated representative member, with attached exhibits.[2] Based on CRZ's discovery

---

[2] CRZ filed two affidavits with attached evidentiary materials in support of its members' standing: one from Mr. Smith and one from Laura Waters. Burton argues that the Court should not consider these submissions as they contain information that CRZ failed to disclose in its discovery responses. We conclude that the affidavit and associated materials provided by Ms. Waters are not appropriate for our consideration at this time. Ms. Waters is not part of the CRZ appellant group, therefore her concerns about environmental impacts are not relevant to the question of CRZ member standing in this appeal. CRZ has provided little explanation of or foundation for the highly technical documents attached to Ms. Waters' affidavit and did not adequately address the discovery issue raised by Burton. *See* V.R.C.P. 37(c) (parties who "fail[] to supplement responses as required by Rule 26(e) [are] not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed").

On the other hand, we conclude that it is appropriate to consider the affidavit of Mr. Smith and related exhibits at least insofar as they provide additional detail and context for the alleged impacts to traffic and pedestrian usage relied upon by CRZ. *See* CRZ Group's Responses to Burton Corp.'s First Set of Interrogatories and Requests to Produce at ¶¶ 7–8, filed Dec. 11, 2020; Affidavit of Lawrence Smith at ¶¶ 1–19, filed Jan. 13, 2021. Mr. Smith is authorized to speak on behalf of the other CRZ members. *See* 24 V.S.A. § 4465(b)(4) (requiring parties appearing under the provision to "designate one person to serve as the representative of the petitioners regarding all matters related to the appeal"). His affidavit and attachments simply expand upon the allegations contained in CRZ's discovery responses by identifying the location of member properties in relation to the Project Site, alleging with

responses, Mr. Smith's affidavit, the attached map, and the member addresses in the record, we summarize CRZ's allegations on behalf of its members as follows:

25. Seven CRZ members must use Central Avenue in South Burlington to travel to and from their properties, the only outlet for which is an intersection with Queen City Park Road directly across the street from the Site's southerly boundary.[3]

26. One member must use Arthur Court in Burlington to travel to and from their property,[4] and the only outlet for Arthur Court is an intersection with Queen City Park Road less than one tenth of a mile from the Site's easterly boundary.

27. Three members must use Austin Drive in Burlington to travel to and from their properties.[5] The only outlet for Austin drive is a three-way intersection with Queen City Park Road and Home Avenue, across the street from the Site's northwestern corner.

28. Thus, whether traveling as pedestrians, cyclists, or motorists, eight members rely on Queen City Park Road for access to and from their properties, while three members must negotiate a three-way intersection with Queen City Park Road.

29. CRZ, on behalf of its members, further alleges that the reconfigurations and improvements at the Site and the changes to curb cuts have the potential to increase traffic congestion and create unsafe traffic conditions along Queen City Park Road and at the three-way intersection with Austin Drive and Home Avenue. CRZ also maintains that the proposed curb cuts have the potential to create unsafe traffic conditions for members and their families as pedestrians and bicyclists.

---

specificity which Project features have the potential to create impacts, and putting the neighborhood surrounding the Site into context to show how members could be affected. Considering that the addresses of CRZ's members have long been part of the record, we cannot identify any reason why Burton would lack the information necessary to refute CRZ's allegations. *See* Petition for Recognition as Interested Person, filed June 8, 2020 (listing CRZ's members and their addresses).

[3] These members are Lawrence Smith, Barbara Pawluk, Susan Hurd, James Grossman, Lori Hayes, Doug Goodman, and Michael Turner. *See* id.

[4] This member is Sharon O'Neill. *See* id. Mr. Smith's affidavit alleges that Doug Goodman, who lives on Central Avenue, also owns property on Arthur Court. To avoid confusion as to the number of members alleging impacts from the Project, we do not include Mr. Goodman's Arthur Court property in our discussion.

[5] These members are Almy Landauer, Janice Ellis, and Stephanie Herrick. *See* id.

6

**Discussion**

Before the Court are cross-motions for summary judgment filed by Burton, the City, and CRZ. We address each motion in turn, and we begin with the motion filed by Burton.

I.      Burton's Motion for Summary Judgement

Burton's motion seeks summary judgment on each of CRZ's 32 Questions and the outright dismissal of this appeal, arguing that (1) CRZ has not demonstrated standing; (2) the appeal concerns issues that are outside the scope of this Court's de novo review; and (3) the appeal is barred as an impermissible collateral attack on a separate municipal approval for the Project.

*a. CRZ's Standing*

Though Burton moves for summary judgment, it seeks to dismiss CRZ for lack of standing. "[S]tanding is a necessary component of the court's subject-matter jurisdiction." Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235 (citing Brod v. Agency of Natural Res., 2007 VT 87, ¶ 2, 182 Vt. 234). While we would typically treat Burton's argument as a motion to dismiss for lack of subject matter jurisdiction pursuant to V.R.C.P. 12(b)(1), in this case both Burton and CRZ have referred the Court to materials outside the pleadings. Therefore, we find it appropriate to evaluate CRZ's standing under the summary judgment standard, which is the standard that both parties assert in their respective motions. *See, e.g.*, Zaremba Group CU – Jericho, No. 101-7-13 Vtec, slip op. at 3 n.2 (Vt. Super. Ct. Envtl. Div. Apr. 21, 2014) (Walsh, J.) (looking "beyond the Statement of Questions to the parties' statements of undisputed facts and materials attached to the motion and the opposition").

Burton argues that CRZ's appeal must be dismissed because its members have not demonstrated the necessary interest in, or injury from the Project to show constitutional standing. CRZ filed its appeal as an interested person pursuant to the "group-of-ten" provision at 24 V.S.A § 4465(b)(4), which provides a statutory right of appeal for the following group:

> Any ten persons who may be any combination of voters or real property owners
> within a municipality . . . who . . . allege that any relief requested by a person under
> this title, if granted, will not be in accord with the policies, purposes, or terms of
> the plan or bylaw of that municipality.

7

24 V.S.A. § 4465(b)(4). CRZ's status as an interested person under the statute is not at issue. Instead, Burton points to this Court's decision in the Capitol Plaza case, which held that "parties appealing as a group-of-ten under § 4465(b)(4) must satisfy both statutory requirements and constitutional standing principles." *See* Capitol Plaza 2-lot Subdivision, Nos. 3-1-19 Vtec and 4-1-19 Vtec, slip op. at 7, 4–5 (Vt. Super. Ct. Envtl. Div. Nov. 12, 2019) (Walsh, J.) (explaining that § 4465(b)(4), in contrast to other provisions under § 4465, "does not reflect elements of the constitutional standing doctrine").

This Court's jurisdiction is limited to "actual cases or controversies." Parker v. Town of Milton, 169 Vt. 74, 76–77 (1998); see also In re Constitutionality of House Bill 88, 151 Vt. 524, 529 (1949) ("The judicial power, as conferred by the Constitution of this State upon this Court, is . . . the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction."). As a key component of the case or controversy requirement, the constitutional standing doctrine ensures that a plaintiff suffers "the threat of actual injury to a protected legal interest." Town of Cavendish v. Vermont Pub. Power Supply Auth., 141 Vt. 144, 147 (1982). Thus, we must evaluate whether CRZ can sufficiently demonstrate standing for at least ten of its members. *See* Capitol Plaza, Nos. 3-1-19 Vtec and 4-1-19 Vtec at 8 & n.2 (Nov. 12, 2019) (reasoning that appellants under § 4465(b)(4) must demonstrate standing as individuals, not as a group); *see also* In re Brandon Plaza Conditional Use Application, No. 128-8-10 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Aug. 5, 2011) (Wright, J.) (noting that appellants under § 4465(b)(4) may continue to pursue an appeal only "if the membership of the group does not fall below the statutory minimum of ten persons.").

To show standing, plaintiffs must demonstrate "(1) injury in fact, (2) causation, and (3) redressability." *See* Parker, 169 Vt. at 76–77; *see also* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (describing the three elements in detail). Most relevant here, plaintiffs must show a "particular injury" rather than "merely speculating about the impact of some generalized grievance." Parker, 169 Vt. at 77 (quotation omitted). At this stage, however, the bar to survive dismissal is not high. In the context of municipal zoning appeals, this Court has looked to the statutory and constitutional requirements and determined that individual appellants need only "establish a non-speculative demonstration, or reasonable possibility, of a physical or

8

environmental impact under criteria that must be reviewed for [the] Project." *See, e.g.*, In re UVM Certificate of Appropriateness, No. 90-7-12 Vtec, slip op. at 12 (Vt. Super. Ct. Envtl. Div. Feb. 26, 2013) (Walsh, J.) (stating that the impact must be "concrete and particularized, and "actual or imminent" rather than hypothetical).

CRZ contends that 11 of its 13 members can make the necessary showing. It alleges that, whether traveling as pedestrians, cyclists, or motorists, a total of 8 members depend on Queen City Park Road for access to and from their properties, while three members must negotiate a three-way intersection with Austin Drive, Queen City Park Road, and Home Avenue. The Project proposes a mix of reconfigured, relocated, and new curb cuts from the Site onto Queen City Park Road, along with reconfigured parking lots. CRZ further alleges that these improvements have the potential to increase traffic congestion and create unsafe conditions for motorists, pedestrians, and cyclists along Queen City Park Road and at the three-way intersection. See CDO §§ 6.2.2(i) (Vehicular access), 6.2.2(j) (Pedestrian access).

Taken as a whole, these allegations indicate that 11 members own property in and around the neighborhood of the Project, and that they would be directly affected by traffic or pedestrian impacts along Queen City Park Road. It is undisputed that the Project is subject to review for traffic and pedestrian impacts, pursuant to the Site Plan Review standards under CDO Article 6. *See* Burton Corp.'s Motion for Summary Judgment at 6, filed Dec. 11, 2020; CDO §§ 6.2.2(i), (j). Considering that the Project involves the reconfiguration of parking lots with a total of 416 spaces, along with relocated and new curb cuts for access to and from those lots along Queen City Park Road, we cannot credit Burton's simple assertion that the Project "does not . . . implicate traffic concerns." *See* Burton Corp.'s Reply in Support of Its Motion for Summary Judgment at 18, filed Jan. 28, 2021.

Taking CRZ's supported factual allegations as true and giving it the benefit of reasonable inferences, we conclude that it has established a "non-speculative demonstration, or reasonable possibility, of a physical or environmental impact" to the interests of 11 out of 13 members "under criteria that must be reviewed." *See* UVM Certificate of Appropriateness, No. 90-7-12 Vtec at 12 (Feb. 26, 2013); *see also* King v. Gorczyk, 2003 VT 34, ¶ 7, 175 Vt. 220 (discussing the summary judgment standard). This is a sufficient showing to withstand dismissal

for lack of constitutional standing in the context of a zoning appeal. *See* Capitol Plaza, Nos. 3-1-19 Vtec and 4-1-19 Vtec at 8 (Nov. 12, 2019) ("Under constitutional principles, the interests must be legally cognizable and somehow affected by the project such that there is a 'particular injury.' Examples might include the impacts of traffic congestion or different types of pollution."). However, CRZ did not include any allegations supporting standing for Elisa Nelson and Kyle Creason.[6] As such, we can only conclude that these members have failed to demonstrate their standing to maintain this appeal. For these reasons, Burton's motion is **DENIED** to the extent it seeks the dismissal of the entire CRZ group and **GRANTED** as to Ms. Nelson and Mr. Creason. Ms. Nelson and Mr. Creason are **DISMISSED** as members of the appellant group.

 b. *Whether CRZ's Questions Are Within the Scope of De Novo Review*

Burton next argues that CRZ's Amended Statement of Questions raises only procedural issues related to the proceedings below, which are irrelevant given the de novo nature of this appeal. Burton is correct that we review appeals from Burlington DRB decisions de novo, and "[a] de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto.'" Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)). Thus, this Court generally does not consider the previous decisions or proceedings below; "rather, we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.).

Because the Court must hear the evidence anew and make its own determination as to the merits of the application, allegations of decisionmaker bias or improper procedure below are typically outside the scope of our review. *See* In re JLD Props. of St. Albans, LLC, 2011 VT 87, ¶ 10, 190 Vt. 259) (indicating that "a de novo hearing would cure any harm resulting" from a conflict of interest below). For the same reason, we do not consider the propriety of the preceding decisions themselves. *See* In re Bissig Subdivision Final Plat, No. 87-7-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Dec. 23, 2013) (Durkin, J.) ("[A] determination of the DRB's authority or the propriety of their conclusion is generally beyond the scope of our review."); Moore 3-Lot

---

[6] Mr. Creason owns property on Home Avenue, and CRZ does not allege any impacts to member properties on Home Avenue. CRZ also notes that Ms. Nelson has moved away.

Subdivision, No. 123-9-13 Vtec, slip op. at 6–7 (Vt. Super. Ct. Envtl. Div. July 28, 2014) (Walsh, J.) (noting that "the accuracy or adequacy" of evidence submitted to the DRB is "not relevant and [is] outside the scope of [the] appeal").  With these limits in mind, we turn to CRZ's Amended Statement of Questions.

1.  Questions 1–4

CRZ's Questions 1–4 allege that the procedure before the DRB was improper and ask whether the DRB's decision should be vacated.  *See* Amended Statement of Questions, filed Sept. 5, 2020.  Questions 1 and 2 suggest that the Zoning Administrator was an improper participant in the DRB's deliberations, while Questions 3 and 4 suggest that the Certificates were issued before certain Project details were approved by the appropriate City authorities.  *See* id. Questions 1 and 2 speak to a potential conflict of interest in the process below.[7]  Under these circumstances, we conclude that any potential harm is cured by the de novo appeal to this Court. *See* JLD Props., 2011 VT 87, ¶ 10 (concluding that the harm resulting from a DRB member's bias was cured by the de novo hearing conducted by this Court).  As to Questions 3 and 4, we do not consider whether the Certificates were issued in error: we consider the application and evidence anew.  In re Freimour & Menard Conditional Use Permit, No. 59-4-11 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div. June 6, 2012) (Durkin, J.) ("[W]e do not address questions seeking our review of the propriety of actions previously taken. . ..").  For these reasons, we conclude that Questions 1–4 are beyond the scope of review in this appeal.  The Questions are therefore **DISMISSED**.

2.  Questions 5–7 and 31

Questions 5–7 and 31 relate to whether the Project is a "planned development" within the meaning of the CDO, such that it should be reviewed under the requirements for a Certificate of Appropriateness Level III.  *See* Amended Statement of Questions.  The DRB's January 27 Decision upheld two Level II Certificates issued by the Zoning Administrator, and CRZ evidently believes that the Project should be reviewed according to the Level III standards.  In essence, Questions 5–7 and 31 ask how the Project should be classified and reviewed pursuant to the CDO. These are legal issues pertaining to the Project and applications under review.

---

[7] We note that there is no indication of improper participation on the part of the Zoning Administrator.

The Court's task in de novo appeals of zoning permits is to determine whether a given application complies with the applicable zoning regulations. The question of which regulations apply here is seemingly relevant, and within the scope of review. Burton has not provided any reason to conclude otherwise and, as a result, has not shown it is entitled to judgment as a matter of law as to Questions 5–7 and 31.

3. Questions 8–30, and 32

   i.     The Issue of Administrative Review

Questions 8–30 and 32 relate to the issue of administrative review, specifically whether the Zoning Administrator had authority to approve the Project administratively. Though Burton argues that the Zoning Administrator's actions are outside the scope of review, we provide a brief overview of the issue here to put CRZ's Questions in context.

Pursuant to CDO § 3.2.8, the DRB must make the final decision on all zoning permit applications unless the applications are "eligible for review and approval by" the Zoning Administrator. In turn, CDO § 3.2.7 provides the Zoning Administrator with authority to review and approve certain categories of applications administratively, including some applications for Level II Certificates.

Here, the Zoning Administrator reviewed Burton's applications and issued two Level II Certificates without sending the matter to the DRB.[8] CRZ's contention in this appeal, made clear by its response to Burton's motion and its own motion for partial summary judgment, is that the Zoning Administrator lacked authority to approve Burton's applications administratively.[9] According to the City, the Project qualified for administrative review under CDO § 3.2.7(a)(10), which authorizes approval of Level II Certificates in design control districts for "[s]imple renovations" including "additions no greater than 500 square feet in size."

---

[8] We note that the applications did eventually come before the DRB, when CRZ and South Burlington appealed the Zoning Administrator's approval of the Project. The DRB's January 27 Decision upheld the Zoning Administrator's determinations. This appeal is taken from the DRB's January 27 Decision.

[9] CRZ's motion for partial summary judgment contends that the Zoning Administrator lacked jurisdiction to approve the Level II Certificates, and the motion provides additional argument and helpful context with respect to the issues raised in Questions 8–30 and 32. *See* CRZ's Motion for Partial Summary Judgment, filed Dec. 11, 2020. We therefore consider all of CRZ's relevant filings in evaluating whether to grant Burton's motion as to Questions 8–30 and 32.

Questions 8–19 discuss the square footage of various proposed improvements, and whether those improvements can be considered "additions" within the meaning of CDO § 3.2.7(a)(10). *See* Amended Statement of Questions. Questions 20–23 discuss the square footage of proposed excavations and ask whether excavations are eligible for administrative review.[10] *See* id. Questions 24–26 relate to the Project's impact on prior DRB approvals for the properties involved.[11] *See* id. Finally, Questions 27–30 and 32 each challenge the Project's eligibility for administrative review in different ways.[12] *See* id. Viewed in the proper context, it is apparent that all of the Questions above speak to the overarching issue of the Zoning Administrator's authority to approve the Project without referral to the DRB.[13]

Because the Questions challenge the authority or the propriety of the decisions below rather than the substance of Burton's applications, they would ordinarily fall outside the scope of review in a de novo appeal. *See* Lancaster SD Application, No. 1-1-14 Vtec, slip op. at 4 (Vt. Super. Ct. Apr. 1, 2015) (Durkin, J.) ("This Court does not consider any previous decisions or proceedings below . . . ."); *see also* Bissig Subdivision, No. 87-7-13 Vtec at 2–3 (Dec. 23, 2013) ("We do not have authority to consider whether the prior DRB . . . approval was appropriate."); In re Smith Boathouse Permit Application, No. 117-8-12 Vtec, slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2012) (Durkin, J.) (dismissing a question regarding the authority of a zoning administrator). Yet, in this case, CRZ argues that appellants face a different evidentiary burden

---

[10] CRZ contends that excavation is considered "development" under the CDO and does not fit into any category of administrative review, therefore the Zoning Administrator had no authority to review the proposed excavations. *See* CRZ's Motion for Partial Summary Judgment at 10–11.

[11] These Questions relate to CDO § 3.2.7(b), which allows the DRB to delegate additional types of review to the Zoning Administrator. The provision requires that "no amendment [to previously approved development] issued as an administrative review shall have the effect of substantively altering any of the findings of fact or DRB decision." *See* CDO § 3.2.6(b); CRZ's Motion for Partial Summary Judgment at 10 n.20.

[12] Question 30 asks whether "the Project require[s] DRB approval in the first instance because it involves demolition." CRZ asserts that the Zoning Administrator did not have jurisdiction to approve the proposed removal of a canopy and shed at the Site. *See* CRZ's Motion for Partial Summary Judgment at 11.

[13] Concluding that these Questions relate to one broader issue does require certain inferences on the part of the Court. However, it is not too great a leap considering that CRZ has stated:

> CRZ emphasizes that it did *not* make a substantive argument before the DRB on the CDO criteria that govern the applicant's eligibility for a permit, nor does it do so here. Although there is some overlap between the facts pertaining to the substantive criteria and the facts that bear on jurisdiction, CRZ's evidence is offered to support only its jurisdictional argument.

CRZ's Motion for Partial Summary Judgment at 3 (emphasis in original).

depending on whether the application is reviewed first by the Zoning Administrator or the DRB. Thus, the argument goes, an improper approval through administrative review encumbered CRZ with a misallocated and more difficult evidentiary burden on appeal, which can be remedied only by vacating the approval and remanding to allow review by the DRB in the first instance.

  ii.  CRZ's Burden of Persuasion

The burden of proof in municipal zoning matters includes burdens of production and persuasion, and in de novo appeals the burdens are allocated between the parties as follows:

> [T]he applicant must first present evidence that its proposed project complies with the applicable zoning provisions preserved for our review in this appeal. Once the applicant fulfills that initial burden of production, the burden of persuasion shifts to the party opposing the project. This Court may only approve a municipal application in a de novo appeal when it is convinced that the proposed project complies with the applicable zoning provisions. Thus, the applicant retains the final burden of persuasion.

In re Pierce Woods PRD and Subdivision Application, No. 33-2-06 Vtec, slip op. at 10 (Vt. Envtl. Ct. Feb. 28, 2007) (Durkin, J.). Discussions of each party's burden can create confusion because there are two distinct burdens of "persuasion:" (1) the opponent's burden to rebut the applicant's initial showing, and (2) the applicant's ultimate burden to demonstrate compliance with the applicable regulations. *See* id.; In re Grp. Five Invs. CU Permit, 2014 VT 14, ¶ 6, 195 Vt. 625, *overruled on other grounds by* In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 6, 206 Vt. 302 (crediting the conclusion that "opponents had not successfully rebutted applicant's showing"); *Burden of Persuasion*, Black's Law Dictionary (11th ed. 2019) ("A party's duty to convince the fact-finder to view the facts in a way that favors that party").

Burton and CRZ appear to agree that the usual burden allocation applies in proceedings before the DRB in the first instance, and before this Court on appeal thereafter. However, the Project here was first approved by the Zoning Administrator. CDO § 12.2.2 sets forth the procedure for "Appeals of Administrative Officer Decisions," and CRZ contends that § 12.2.2(d) places the ultimate burden of persuasion on the appellant rather than the applicant in this case. Burton argues that § 12.2.2(d) did not meaningfully alter CRZ's burden on appeal to the DRB and in any event it does not apply on appeal to this Court. CDO § 12.2.2(d) states:

When an appeal is taken to the DRB in accordance with this section, the administrative officer shall have the initial burden of presenting sufficient evidence and argument to justify the order or decision appealed from. The burden of presenting evidence and argument to the contrary then shifts to the appellant, who shall also have the burden of persuasion.

This provision is certainly quirky, and exceedingly ambiguous. One oddity is that it places the initial burden of production on the Zoning Administrator rather than the applicant. Without delving into a deeper analysis, we observe that this might be the case because § 12.2.2 sets the appeal procedures not just for permit approvals or denials, but also enforcement decisions and other actions taken by the Zoning Administrator. *See, e.g.*, CDO § 2.7.12 ("A decision . . . pertaining to an alleged zoning violation may be appealed to the DRB in accordance with . . . Article 12"). As to the burden of persuasion, CRZ argues that the meaning of § 12.2.2(d) is clear: appellants challenging a decision of the Zoning Administrator bear the ultimate burden of persuasion. Yet, as Burton points out, project opponents always bear a burden of persuasion to rebut the applicant's initial showing of compliance with the applicable zoning regulations. *See* Pierce Woods, No. 33-2-06 Vtec at 10 (Feb. 28, 2007). If the opponents satisfy that burden, the application will be denied unless the applicant presents additional persuasive evidence or argument. *See* id. ("[T]he applicant retains the final burden of persuasion.").

CRZ assumes that there is only one burden of persuasion, when in fact there are two. The plain language of § 12.2.2(d) does not specify which of the two should be placed on the appellant. However, we need not address the effect of § 12.2.2(d) on proceedings before the DRB because we agree with Burton that the provision does not apply in this de novo appeal. CRZ argues that § 12.2.2(d) is made applicable by a statutory directive for this Court to "apply the substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h); *see also* V.R.E.C.P. 5(g). Yet the same statute requires the Court to conduct a de novo hearing, "where the case is heard as though no action whatever has been held prior thereto." *See* 10 V.S.A. § 8504(h); Chioffi v. Winooski Zoning Bd., 151 Vt. at 11 (quotation omitted) (discussing de novo trials).

We have previously held that 10 V.S.A. § 8504(h) includes "*both* a requirement as to which municipal regulations control our determination *and* which party carries the initial burden of

production and subsequent burdens of persuasion." *See* <u>Pierce Woods</u>, No. 33-2-06 Vtec at 10 (Feb. 28, 2007) (emphasis added). The statutory mandate for a de novo hearing means that, although the Court "sits in the shoes of the DRB," we do not review challenges to the Zoning Administrator's initial decision. *See* <u>In re Goddard College Conditional Use</u>, No. 175-12-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Apr. 30, 2013) (Walsh, J.); <u>Northern Vermont Rentals, LLC Extension</u>, No. 5-1-17 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Nov. 02, 2017) (Walsh, J.) ("We hear appeals from permit application decisions de novo, sitting in the place of the decision-making body below . . . and determine whether the application should be approved.").

Regardless of whether the case originates with a zoning administrator or municipal panel, we have consistently held that a de novo appeal requires the Court to "review the application anew." *See* <u>Whiteyville Props.</u>, No. 179-12-11 Vtec at 1 (Dec. 13, 2012); *see also, e.g.*, <u>Lancaster SD Application</u>, No. 1-1-14 Vtec, slip op. at 4 (Vt. Super. Ct. Apr. 1, 2015) (Durkin, J.) ("[W]hether the ZA or DRB erred in approving the application [is] not considered . . . we only have the authority in de novo appeals to render our own determination of whether the challenged application conforms to the applicable regulatory provisions.").

Thus, the allocation of burdens in a de novo appeal of permit applications to this Court is the same as it would be before the DRB in the first instance. CDO § 12.2.2(d) applies only when the DRB is evaluating a decision of the Zoning Administrator. *See* CDO §§ 12.2.2, 2(d). Because we have a statutory mandate to consider Burton's applications anew, and we may not review the Zoning Administrator's decision, we conclude that § 12.2.2(d) does not apply. *See* 10 V.S.A. § 8504(h). For these reasons, we decline to depart from the well-established principle that "once any *de novo* appeal reaches this Court, regardless of whether an application was granted or denied, and regardless of which party appealed, the burden remains on the applicant to demonstrate that an application meets the requirements of the zoning ordinance." <u>In re Woodstock Comty. Trust, Inc.</u>, No. 126-6-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Oct. 03, 2007) (Wright, J.); *see also* <u>Pierce Woods</u>, No. 33-2-06 Vtec at 10 (Feb. 28, 2007); <u>In re Bjerke Zoning Permit Denial</u>, 2014 VT 13, ¶ 18, 195 Vt. 586 ("[A]pplicant had the burden of proving that his application actually complied with the ordinance.") (citation omitted). It follows that CRZ does not face an inappropriate or unfair burden of persuasion in this appeal.

We have determined that Questions 8–30 and 32 represent a challenge to the authority or propriety of the Zoning Administrator's decision approving Burton's applications. We further conclude that the burden of persuasion on appeal to this Court does not operate to CRZ's detriment; rather it provides a full and fair opportunity to challenge the Project's conformance with the applicable regulations. In the normal course, we do not have authority to review the Zoning Administrator's decision with respect to the applications. We cannot identify a reason to do so here. Thus, we conclude that Questions 8–30 and 32 are outside the scope of review and beyond our subject matter jurisdiction. *See* Bissig Subdivision, No. 87-7-13 Vtec at 2–3 (Dec. 23, 2013); Lancaster, No. 1-1-14 Vtec at 4 (Apr. 1, 2015). Questions 8–30 and 32 are therefore **DISMISSED**.[14]

### c. Whether CRZ's Appeal Is An Impermissible Collateral Attack

Finally, Burton argues that this Court lacks jurisdiction to consider CRZ's appeal because it represents a collateral attack on the DRB's unappealed February 6 Decision. Pursuant to 24 V.S.A. §§ 4471 and 4472(a), an appeal is the "exclusive remedy" for a party seeking to challenge a municipal act or decision. If a direct appeal is not taken, the decision of the municipal panel is final and cannot be contested "either directly or indirectly" in subsequent proceedings. *See* 24 V.S.A. § 4472(d); *see also* Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989) (concluding that plaintiffs were unable to collaterally attack a 1984 decision of the zoning board by claiming the decision was void ab initio). In short, "[f]ailure to file a timely appeal from a decision of the [DRB] deprives [this] court of jurisdiction to consider that decision." In re Ashline, 2003 VT 30, ¶ 8, 175 Vt. 203.

Burton asserts that the DRB issued two decisions approving the Certificates for the Project: The January 27 Decision and the February 6 Decision. As the February 6 Decision was not appealed, Burton argues that CRZ's appeal of the January 27 Decision is an impermissible collateral attack on a final decision of the DRB. While the implications of § 4472's exclusivity-of-

---

[14] We reach this conclusion after a great deal of consideration, and we recognize that these Questions represent almost the entirety of CRZ's appeal. Yet, as much as it pains the Court to dismiss the bulk of the appeal in summary fashion, CRZ has explicitly rejected the opportunity to raise issues going to the merits of Burton's applications. Though it is not this Court's place to question the parties' litigation strategies, we note that nothing precluded CRZ from raising a substantive challenge alongside its technical one.

remedy provision are clear, its application in this case is not. Considering the context and contents of the two DRB decisions at issue, we conclude that Burton has not shown it is entitled to judgment as a matter of law at this time.

Both decisions of the DRB arise out of the same meeting on January 22, 2020. The January 27 Decision concerns CRZ's appeal to the DRB of two Certificates issued by the Zoning Administrator. In that decision, the DRB addresses CRZ's concerns and unambiguously upholds the Zoning Administrator's determinations – thereby approving the Certificates. The February 6 Decision purportedly relates to South Burlington's separate appeal of the same Certificates, yet it is undisputed that Burton and South Burlington reached a settlement agreement, and that South Burlington withdrew its appeal prior to the hearing. It is further undisputed that Burton attended the hearing and submitted revised site plans along with a proposed condition regarding the southeasternmost driveway on the 266 Property. The DRB's February 6 Decision adopts Burton's proposed condition.

Burton asserts that "The February 6 Decision is a separate approval of the Site Work Project," and that "CRZ's failure to appeal that decision resulted in a final decision on the merits of Burton's application, which CRZ cannot collaterally attack in this appeal." *See* Burton's Motion for Summary Judgment at 19. For the following reasons, we cannot reach that conclusion here. First, the circumstances surrounding the February 6 Decision cast doubt on the idea that it is a separate approval on the merits. South Burlington had already withdrawn its appeal and did not attend the hearing. Instead, at the same meeting underlying the January 27 Decision, Burton presented revised site plans along with a proposed condition for the 266 Property consistent with its settlement agreement. The February 6 Decision acknowledges the revised site plans and adopts the proposed condition. Thus, the February 6 Decision appears to simply memorialize and approve a new condition for the Project at the applicant's request, pursuant to a stipulated settlement agreement.[15]   Second, we observe that there are two applications and two

---

[15] The ambiguity surrounding the February 6 Decision also leaves us to wonder what issues could be properly raised if CRZ did appeal it. All of CRZ's Questions in this case appear relevant to the contents and import of the January 27 Decision – not the single condition adopted by the DRB in the February 6 Decision. *Cf*. In re Hopkins Certificate of Compliance, 2020 VT 47, ¶ 11 (applying § 4472 and noting that the appellant's challenges and claimed injury did not relate to the decision he appealed, but rather the decision he failed to appeal).

Certificates at issue: one for the 180 Property and one for the 266 Property. The February 6 Decision appears to relate only to the Certificate for the 266 Property. To the extent the decision is a final and binding approval, Burton has not explained how or why it operates to bar this appeal of both Certificates in its entirety.

Finally, we note the proximity in time of the two decisions. The hearing and deliberation for both occurred during the same meeting. CRZ appealed the January 27 Decision on February 20, 2020, within the 30-day appeal period. At that time, the period for appeal of the February 6 Decision was still open. Burton suggests that the January 27 Decision was an "interim" decision followed by the "final" decision in February, yet it also appears to argue that both are final decisions on the Certificates in the context of separate appeals. Regardless of how the decisions are characterized, we are inclined to agree with CRZ that the application of § 4472 here would not serve its "policy of repose grounded in the premise that, with respect to municipal zoning, there should, in fairness, come a time when the decisions of an administrative officer become final so that a person may proceed with assurance instead of peril." *See* In re Hopkins Certificate of Compliance, 2020 VT 47, ¶ 8 (quotations omitted). In the face of these unresolved issues, and giving CRZ the benefit of all reasonable doubts and inferences, we cannot conclude that this appeal should be dismissed outright.

For the reasons above, Burton's motion for summary judgment is **GRANTED** as to the standing of CRZ members Elisa Nelson and Kyle Creason, and the dismissal of Questions 1–4, 8–30, and 32. The motion is **DENIED** in all other respects. Questions 5, 6, 7, and 31 remain before the Court, and are addressed further below in the context of the City's motion for summary judgment.

II.     CRZ's Motion for Partial Summary Judgment

CRZ argues in their motion that the Zoning Administrator was without jurisdiction to approve the Project administratively because (1) the proposed improvements are not "additions no greater than 500 square feet in size" within the meaning of CDO § 3.7.2(a)(10); (2) the proposed excavations are considered "development" under the CDO and are not eligible for administrative review; and (3) the proposed removal of a shed and canopy involves demolition which is not eligible for administrative review. The motion further asserts that, because of the

19

improper administrative approval, CRZ is faced with a misallocated and more difficult evidentiary burden on appeal. CRZ contends that this is a prejudicial error which can be remedied only by vacating the DRB's January 27 Decision; voiding the Certificates issued for the Project; and remanding Burtons' applications to allow review by the DRB in the first instance.

In our discussion of Burton's motion for summary judgment above, we considered CRZ's relevant arguments in full and determined that CDO § 12.2.2(d) does not apply in this de novo appeal. Because CRZ is not subject to a prejudicial evidentiary burden, and because de novo review requires the Court to consider Burton's applications anew without deference to or examination of the decisions below, we concluded that questions relating to the authority or propriety of the Zoning Administrator's approval are beyond the scope of review in this matter. Thus, we dismissed Questions 8–30 and 32. As there are no remaining Questions relevant to CRZ's motion, the motion is **MOOT.** *See* Amended Statement of Questions.

III.     The City's Motion for Summary Judgment

We now address the City's motion, which seeks summary judgment on all of CRZ's Questions. The motion is **MOOT** as to the issues raised in Questions 1–4, 8–30, and 32, all of which have been dismissed. We consider the City's motion as it relates the Questions remaining before the Court: Questions 5, 6, 7, and 31. Each of these speak to the larger question of whether the Project is a "planned development" within the meaning of CDO § 3.2.2(e) such that a Level III Certificate of Appropriateness is required. *See* Amended Statement of Questions; CDO § 3.2.2(e). The City contends that the Project is not a planned development, and CRZ offers no response to the City's argument.

We agree with the City that the Project need not be considered as a planned development because it was not proposed as one. When interpreting statutes and zoning ordinances, we apply the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources without being limited by an isolated sentence." In re Stowe Club Highlands, 164 Vt. 272, 280 (1995). In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters. Colwell v.

Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61.  We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense."  In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted).

At the outset, we note that the CDO uses the terms "planned development" and "planned unit development" interchangeably.  *See* CDO Art. 11 (titled "Planned Development," and governing "Planned Unit Development").  As such, when CDO § 3.2.2(e) states that a Level III Certificate "is required for . . . planned developments," it is referring to projects that are considered planned unit developments ("PUDs").  The CDO defines a PUD as: "One or more lots, tracts, or parcels of land to be developed as a single entity, the plan for which may propose any authorized combination of density or intensity transfers or increases, as well as the mixing of land uses."  CDO Art. 13.  The Project appears to meet at least part of the definition for a PUD, as it involves "one or more lots . . . to be developed as a single entity."  *See* id.  It is undisputed that Burton proposes improvements for its corporate campus, which spans the 180 Property and the adjacent 266 Property.

However, in this case the CDO does not require all projects which may fit the definition of a PUD to be proposed, classified, or approved as such.  Article 11 of the CDO governs PUDs and is authorized by 24 V.S.A. § 4417.  By statute, municipalities are encouraged to provide for PUDs "to permit flexibility in the application of land development regulations."  *See* 24 V.S.A. § 4417(a).  If a municipality chooses to enact PUD regulations, it "may" require that the regulations apply to certain types of projects.  *See* id. §§ 4417(b), (b)(1) ("The application of [PUD] bylaws *may* . . . [b]e mandatory for . . . projects of a specified type or magnitude.") (*emphasis added*); Weitz v. Weitz, 2019 VT 35, ¶ 8, 210 Vt. 248 (noting that "use of the permissive term 'may' shows that [the action] is . . . option[al]").

Though the City could mandate PUD review for certain projects, it has not done so.  *See* CDO § 11.1.3 (stating that "development involving multiple lots . . . to be developed as a single entity . . . *may* be permitted as a PUD").  Thus, under the CDO, proposing a PUD is an option but not a requirement for applicants seeking "greater flexibility in the design and layout of more complex developments."  *See* CDO Art. 11, *Introduction* (noting that "[i]n exchange for flexibility . . . the application must undergo a more rigorous application and review process.").

21

Because the regulations here do not mandate PUD review, it follows that a project is not a "planned development" in the regulatory sense unless it is proposed as a PUD. As there is no indication that Burton sought approval for a PUD, we conclude that the Project is not a "planned development" within the meaning of CDO § 3.2.2(e) such that it requires a Level III Certificate. The City's motion is therefore **GRANTED** to the extent it argues the same. Because the Project does involve "one or more lots . . . to be developed as a single entity," we answer Question 5 in the affirmative.[16] *See* CDO Art. 13 (defining "Planned Unit Development"). Questions 6, 7, and 31 are answered in the negative.[17]

## Conclusion

For the foregoing reasons, Burton's motion for summary judgment is **GRANTED** as to the standing of CRZ members Elisa Nelson and Kyle Creason, and the dismissal of Questions 1–4, 8–30, and 32. The motion is **DENIED** in all other respects.

CRZ's motion for partial summary judgment is **MOOT**. The City's motion for summary judgment is **MOOT** as to Questions 1–4, 8–30, and 32, and **GRANTED** to the extent it argues that the Project is not a "planned development" within the meaning of CDO § 3.2.2(e) such that it requires a Certificate of Appropriateness Level III application.

Ms. Nelson and Mr. Creason are **DISMISSED** as members of the appellant group. Questions 1–4, 8–30, and 32 are **DISMISSED**. Question 5 is answered in the affirmative, and Questions 6, 7, and 31 are answered in the negative. These determinations address all legal issues presented by Appellants in their Amended Statement of Questions.

A Judgment Order accompanies this Decision. This concludes the matter before the Court.

---

[16] CRZ's Question 5 asks whether "the involved applications . . . call for interdependent physical changes to adjoining separate lots under a single plan of development." Amended Statement of Questions.

[17] Questions 6, 7, and 31 ask:

6. Does the Project constitute a "planned development" within the meaning of Section 3.2.2 (e) of the Burlington Comprehensive Development Ordinance ("CDO")?

7. Does the Project require a "COA Level III Application" within the meaning of Section 3.2.2 (e) of the CDO?

31. Does the Project require DRB approval in the first instance because it is a "planned development" within the meaning of the CDO?

Amended Statement of Questions.

Electronically signed on June 25, 2021, at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division